WALTER DUFRESNE *vs.* EDOUARD THEROUX *d.b.a.* THEROUX BROS. TRUCKING.

JUNE 25, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of trespass on the case for negligence. At the trial in the superior court the plaintiff was nonsuited and he has duly prosecuted his bill of exceptions to this court to have that ruling reviewed.

One of the grounds urged by the defendant in support of the granting by the trial justice of the motion for a nonsuit is that the plaintiff failed to prove any negligence on the part of the defendant. The plaintiff denies this.

The plaintiff's declaration is in two counts: In the first count he alleges, among other things, that on July 22, 1933 the defendant owned a certain motor truck which was under the care of Phillip Parenteau, his servant and agent, acting within the scope of his authority; that said truck on that date was loaded with bales of wool which were being delivered at a certain mill in Woonsocket in this state; that it was the duty of the defendant, through his servant and agent, to use reasonable care in unloading the bales of wool from the truck so as not to negligently injure the plaintiff who was then lawfully upon the truck with the defendant's consent; yet the defendant, through his servant and agent, disregarding his duty "negligently and without warning . . . and without having proper control of said bales of wool, pulled a bale from the top of said truck, which bale rolled down and struck the plaintiff in the chest . . . knocking him backward and causing him to fall from the truck to the ground", thus inflicting the injuries complained of.

The first part of the second count is substantially similar

to the corresponding part of the first count. The plaintiff then alleges in the second count that the defendant through his servant and agent "moved a bale from the top of the truck, which bale rolled down and struck the plaintiff in the chest . . . knocking him backward and causing him to fall from the truck to the ground . . . ." The plaintiff further alleges that in the ordinary instance no injury would have resulted to him unless from carelessness on the part of the defendant's servant and agent in the handling of said bale, and that "at the time of the injuries to him the possession and user of the said bale was in the sole control of the defendant's servant and agent . . . and that the injurious occurrence happened irrespective of any unvoluntary action at the time by the plaintiff, and aside from the fact that such injuries do not ordinarily occur if due precautions are taken, the plaintiff has no further knowledge of the precise thing or things on the part of the defendant's agent or servant . . . which caused the bale to fall upon him . . . ."

We do not deem it necessary to discuss the exact status of the plaintiff in relation to his presence on the truck. For the purposes of this case we will assume, without deciding, that he was properly there. In his direct examination the plaintiff did not explain the accident. He merely testified that he was standing on the truck; that Parenteau and Ernest Theroux, a brother of the defendant, were handling the bales; that he saw Parenteau roll a bale off the truck; and that the witness turned to speak to Ernest Theroux and that is the last thing that he remembers. His next recollection was in the hospital.

In his cross-examination, however, the plaintiff described the happening of the accident, in substance, as follows: He stated that the so-called bales of wool were cardboard containers filled with tops of wool, and that he believed they weighed between 350 and 375 pounds apiece. He testified that he climbed onto the truck as it was being unloaded, but that he was not asked to help and did not do so; that he stood on the load close to the side of the truck and backed up

against the cab with his elbow against it; that in general he was facing towards the rear of the truck; that he was speaking to Ernest Theroux, who was on the ground about eight feet below, the body of the truck being about four feet in height and the load itself making up the remaining distance; and that over the cab was a rack on which part of the load was carried. He further testified that while so standing, his head being higher than the cab, he was suddenly struck on the side of his chest by a bale which came from the cab; that this bale did not come over his head or over his shoulders; that he did not see the bale when it struck him but felt the blow, and that is all that he remembers; that he did not see Parenteau pull any bale from the rack; that Parenteau was unloading the truck and was at that time about the width of a bale away from the witness on the opposite side of the truck and near the cab; and that the bales, so called, were not round but were oblong containers flat on all sides.

It is well settled that on a motion for a nonsuit it is the duty of the trial justice to view the evidence most favorably to the adverse party and to draw from such evidence all reasonable inferences in favor of that party. If there is any evidence to support the plaintiff's right of action the motion must be denied. *Walling* v. *Jenks,* 62 R. I. 424; *Pucciarelli* v. *United Electric Rys. Co.,* 64 R. I. 269. In the instant case the rule must be applied to the evidence as it may relate to both counts of the plaintiff's declaration. After a careful consideration of the evidence from this standpoint we are of the opinion that the trial justice was not in error in granting the defendant's motion for a nonsuit.

In the first count of his declaration the plaintiff charges that the defendant is liable because of the specific negligence of Parenteau, the defendant's servant and agent, acting within the scope of his authority, such negligence being the proximate cause of the plaintiff's injury and occurring while Parenteau was unloading the defendant's truck. In our judgment the evidence does not support the allegations of this count. Certainly, there is no direct evidence that Parenteau

was guilty of any such negligence, and we are unable to perceive how any reasonable inference to that effect can be drawn from the evidence presented.

The plaintiff's claim, in substance, is that while he was standing on the loaded truck he was struck on the side of his chest by a bale, so called, which, however, he did not see but which, in some manner, apparently came over the cab of the truck. How he knew this fact is not clear. He testified that Parenteau was at this time not far away from him, but was on the opposite side of the truck, which he was engaged in unloading, and that the plaintiff did not see Parenteau pull any bale from the rack above the cab. There is no evidence, direct or by reasonable inference, that the bale which allegedly struck the plaintiff was moved or handled in any way. by Parenteau, or that the latter was even moving any bale at that time. There is also no evidence, direct or by reasonable inference, that any bale rolled against the plaintiff, as was alleged in the first count of the declaration. On the contrary, there is evidence that the bales, so called, were cardboard containers oblong in shape with flat sides. On the plaintiff's case, as submitted, the cause of the accident is, therefore, left entirely to speculation and conjecture.

In the second count of his declaration the plaintiff apparently is attempting to bring his case within the doctrine of *res ipsa loquitur*. That doctrine has been applied when the cause or instrumentality of an accident is entirely under the control of a defendant, when such an accident does not ordinarily occur after due precautions have been taken, and when the plaintiff has no knowledge or means of knowledge of what brought the accident about. However, upon examination it is clear that this count does not set out a case based solely on that doctrine. Parts of the count are seemingly inconsistent. In the first portion thereof the plaintiff alleges a specific act of negligence on the part of the defendant's servant and agent similar to that set out in the first count of the declaration. This allegation implies that the plaintiff had knowledge of the cause of the accident and the manner

of its happening; whereas in a later portion of the count plaintiff alleges that he had no such knowledge or means of knowledge. The application of the doctrine of *res ipsa loquitor.* on such inconsistent pleading is extremely doubtful, to say the least.

However, regardless of the apparent inconsistency in the allegations of the second count, the plaintiff in his testimony attempted to explain how the accident happened and in what respect the defendant's servant and agent was negligent. This testimony neither directly nor by reasonable inference showed that Parenteau was guilty of the specific act of negligence charged against him in the first count, or in the first part of the second count. Any presumption of negligence that might have been raised in a proper case under the doctrine of *res ipsa loquitor* was completely nullified by the plaintiff's own testimony concerning the circumstances surrounding the accident. This testimony destroyed any such possible presumption. Therefore, on the evidence the proximate cause of the accident was left entirely to speculation and conjecture under the second count, as under the first. In our judgment, with or without the benefit of the doctrine of *res ipsa loquitur,* the plaintiff's evidence failed to make out a proper case under either of said counts.

Plaintiff's exception is overruled and the case is remitted to the superior court for entry of judgment on the nonsuit.

*John R. Higgins, Higgins & Silverstein,* for plaintiff.
*Eugene L. Jalbert, Adonat J. Demers,* for defendant.

